7 F.3d 1130
 1993-2 Trade Cases P 70,471, RICO Bus.Disp.Guide 8402,
28 U.S.P.Q.2d 1533
 MYLAN LABORATORIES, INCORPORATED, Plaintiff-Appellant,
v.
Raj MATKARI; Dilip Shah; Raju Vegesna; Mohammed F. Azeem;
Charles Chang; David J. Brancato; Jin-Shung Chang;
Walter Kletch; Jan T. Sturm; Pharmaceutical Basics,
Incorporated; Par Pharmaceuticals, Incorporated; Quad
Pharmaceuticals, Incorporated; American Therapeutics,
Incorporated; American Home Products Corporation; Quantum
Pharmics, Limited; Steven Colton; Salvatore J. Pinella,
Defendants-Appellees,
and
Ashok Patel; Vitarine Pharmaceuticals, Incorporated, Defendants.
 No. 93-1041.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 3, 1993.
Decided Oct. 18, 1993.
 
 Judith Best, Debevoise & Plimpton, Washington, DC, argued (Loren Kieve, Ann M. Ashton, on brief), for plaintiff-appellant.
 Peter Zimroth, Arnold & Porter, New York City, Donald John Mulvihill, Cahill, Gordon & Reindel, Washington, DC, argued (Kenneth V. Handal, Arnold & Porter, New York City, Kathy Silberthau Strom, Scott A. Martin, Cahill, Gordon & Reindel, Washington, DC, William J. Ruane, Asst. Gen. Council-Litigation, American Home Products Corp., New York City, Thomas J. McGrew, Richard M. Cooper, Richard S. Hoffman, David C. Kieman, Williams & Connolly, Steven Salky, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Hamilton P. Fox, III, Sutherland, Asbill & Brennan, Washington, DC, August Draeb, Draeb Law Office, Hebron, ND, on brief), for defendants-appellees.
 Before ERVIN, Chief Judge, and MURNAGHAN and NIEMEYER, Circuit Judges. Reversed by published opinion. Judge Murnaghan wrote the opinion, in which Chief Judge Ervin and Judge Niemeyer joined.
 OPINION
 MURNAGHAN, Circuit Judge:
 
 
 1
 Plaintiff-appellant Mylan Laboratories, Inc. ("Mylan") has appealed the dismissal of its Third Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court dismissed all of Mylan's claims with prejudice.
 
 
 2
 On appeal, Mylan has maintained that its Third Amended Complaint was sufficient to survive the Rule 12(b)(6) stage. Specifically, Mylan has asserted that it properly alleged numerous violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., several claims for damages for false advertising under the Lanham Act, 15 U.S.C. §§ 1117 and 1125(a), and, finally, state law claims for unfair business competition and tortious interference with prospective business relations. Mylan further has contended that even if it failed to state a claim under Rule 12(b)(6), the district court abused its discretion when it dismissed the complaint with prejudice and prohibited further motions to amend.
 
 
 3
 Mylan is a corporation engaged in developing, manufacturing, and distributing prescription and generic drugs. In 1989, it filed suit against several manufacturers involved either directly or through a subsidiary in the generic drug industry, various officers of those corporations, and several employees of the Food and Drug Administration ("FDA"). Mylan originally filed its suit in the United States District Court for the District of Columbia; however, in March 1990, Judge Thomas F. Hogan, finding venue to be improper, transferred the case to the District of Maryland. Shortly thereafter, Mylan completed its first round of amendments to its complaint. The First Amended Complaint charged the defendants with numerous anti-trust violations, violations of RICO, and violations of state law for unfair business competition and tortious interference with prospective business relations. Mylan essentially claimed that between 1984 and 1989, the defendants conspired to facilitate and did facilitate fraudulent FDA approval of their abbreviated new drug applications ("ANDAs") for generic drugs.[1] At the same time, the complaint charged, the defendants wrongfully delayed or impeded the processing of Mylan's ANDAs.
 
 
 4
 Upon review of a motion to dismiss the First Amended Complaint, Judge Norman P. Ramsey of the United States District Court for the District of Maryland dismissed against all of the defendants Mylan's anti-trust claims and Count 3, a RICO claim premised on a theory of a single conspiracy or joint action among all of the defendants in violation of 18 U.S.C. § 1962(d). In ruling on the legal sufficiency of the remaining RICO counts, Judge Ramsey considered Mylan's pleadings of predicate acts, which included allegations of bribery, obstruction of justice, and mail and wire fraud. He concluded that one of Mylan's theories of mail and wire fraud was legally insufficient and that the other was not pleaded with enough particularity under Federal Rule of Civil Procedure 9(b). Judge Ramsey then dismissed Count 1, arising under RICO, 18 U.S.C. § 1962(c), against only American Home Products Corp. ("AHP"), Quantum Pharmics, Ltd. ("Quantum"), and Jin-Shung Chang on the grounds that Mylan had failed to show a pattern of racketeering activity. He also dismissed Count 2, arising under RICO, 18 U.S.C. § 1962(a), against individual defendants Raj Matkari, Ashok Patel, Dilip Shah, Raju Vegesna, as well as against Jin-Shung Chang and corporate defendants AHP and Quantum. Judge Ramsey completed his review by sustaining, as against all of the defendants, Mylan's state-law claims. See Mylan Lab., Inc. v. Akzo, N.V., 770 F.Supp. 1053 (D.Md.1991).
 
 
 5
 Mylan then moved to file a Second Amended Complaint. The new complaint contained substantial alterations, including additions of new claims and new allegations, as well as numerous deletions. Judge Ramsey, however, denied without prejudice Mylan's motion to amend on the grounds that Mylan had failed to comply with Local Rule 103.6.c which requires highlighting of all amendments. The record, the Judge noted in his ruling, had become "confused virtually beyond analysis by the proposed second amended complaint." In short, the highlighting of all changes to the complaint was essential for the case to proceed properly. Mylan promptly submitted a corrected complaint and a revised Motion to Amend.
 
 
 6
 Shortly thereafter, Judge Ramsey left the bench, and the case was transferred to Judge Frederic N. Smalkin of the United States District Court for the District of Maryland. Before granting Mylan's revised motion to amend, Judge Smalkin ordered Mylan to delete all claims against corporate defendant Akzo, N.V., in accordance with Judge Ramsey's then-recent ruling dismissing the corporation from the case for lack of personal jurisdiction. See Mylan Lab., Inc. v. Akzo, N.V., 2 F.3d 56 (4th Cir.1993) (affirming Judge Ramsey). Finally, in order "to prevent this case from becoming totally unmanageable," Judge Smalkin announced that he would permit no further motions to amend after Mylan's resubmission. In July 1992, Mylan submitted its Third Amended Complaint.
 
 
 7
 The most recent and substantially down-sized complaint contains four counts. The complaint lists as defendants seven corporations: Pharmaceutical Basics, Inc. ("PBI"), Par Pharmaceutical, Inc. ("PAR"), a Par subsidiary, Quad Pharmaceuticals, Inc. ("Quad"), American Therapeutics, Inc. ("ATI"), Vitarine Pharmaceuticals, Inc. ("Vitarine"), Quantum, and Quantum's parent, AHP. In addition, the complaint lists various individual defendants, including persons who are or were at all relevant times officers of the defendant corporations or FDA employees. Counts 1 and 2 assert violations of RICO essentially consonant with those Judge Ramsey had ruled in favor of allowing to proceed. Specifically, Count 1 alleges a violation by all defendants of 18 U.S.C. § 1962(c).[2] Count 2 alleges that defendants PBI, Par, Quad, ATI, Vitarine, AHP, Quantum, Mohammed Azeem, Jin-Shung Chang, Charles Chang, David Brancato, Walter Kletch, and Jan T. Sturm violated 18 U.S.C. § 1962(a).[3] In Count 3, Mylan introduced a claim that had not appeared in the First Amended Complaint and, hence, had not been addressed by Judge Ramsey. The new allegations state that defendants AHP, Quantum, PBI, and Par violated the Lanham Act, 15 U.S.C. § 1125(a), by using false and misleading advertisements. Finally, Count 4 reasserts against all of the defendants the state-law claims of unfair business competition and tortious interference with business relations.
 
 
 8
 With respect to Counts 1 and 2 (the RICO counts) and Count 4 (the state law claim), it is true that Mylan has kept in its Third Amended Complaint general language that suggests some claim of a joint or "global" conspiracy among all of the defendants to commit a single pattern of racketeering activity. Judge Ramsey already had ruled, and Judge Smalkin agreed, that a claim of a global action among all of the defendants was not supported by Mylan's allegations. Perhaps the global conspiracy language which remains in the third version of the complaint was the result of less-than-careful draftsmanship. The language also could be read as a highly simplistic and inartful attempt to provide the court, in so many words, with a general overview to a complex set of circumstances involving numerous defendants. Nevertheless, the complaint also contains numerous factual allegations of separate patterns of racketeering activity committed by various groups of defendants. Although agreeing that the global conspiracy, standing alone, would be insufficient, we are reluctant, at the relatively early Rule 12(b)(6) stage, to affirm the entire dismissal of Mylan's RICO and common law claims for failure to state a claim on the basis of the misleading additional language concerning joint activity. Accordingly, we reverse the decision to dismiss Counts 1, 2, and 4. We caution, however, that a claim held not dismissible at the Rule 12(b)(6) level must eventually still be proven.I. Standard of Review
 
 
 9
 We review a district court's dismissal under Rule 12(b)(6) de novo. See, e.g., Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. See, e.g., De Sole v. United States, 947 F.2d 1169, 1171 (4th Cir.1991).[4]
 
 
 10
 II. RICO Claims (Counts 1 and 2) and State-Law Claims of Unfair Competition and Tortious Interference with Business Relations (Count 4)
 
 
 11
 The primary problem identified by Judge Smalkin with Mylan's two RICO counts and its state-law claims essentially boils down to the following allegation appearing in the beginning of Count 1:
 
 
 12
 The racketeering acts committed by each of the defendants identified below were related to one another and formed a pattern of racketeering activity in that they were in furtherance of the common goals of profiting illegally at Mylan's expense and were focused upon undermining the integrity of the FDA approval process in order to improperly obtain economic advantage.
 
 
 13
 Third Am.Compl. p 114. That statement, or more accurately, that "theme," was either repeated or incorporated by reference into Counts 2 and 4. The district court and the defendants have convincingly demonstrated that not one of the extensive allegations described in Mylan's complaint supports any claim that all of the defendants acted together, in a single, global pattern of racketeering activity, driven by the united goal of profiting illegally at Mylan's expense.
 
 
 14
 In his opinion dismissing substantial portions of Mylan's First Amended Complaint, Judge Ramsey specifically rejected Mylan's theory of a "global conspiracy" among the various defendants. Mylan, he concluded, had failed to present any sufficient allegations to support such a claim. Mylan, 770 F.Supp. at 1066-68, 1077. In fact, Judge Ramsey noted that Mylan's allegations showed that the generic drug industry was one of intense competition, of continuous battles to obtain the all-important first FDA approval of a generic drug and, thus, the first place on the market. In light of that ambitious environment, it was at least as likely, he concluded, that the defendants' actions were the independent product of self-interested competition. Id. at 1068 (noting that Mylan alleged "nothing tending to exclude the possibility that the defendants acted independently").[5]
 
 
 15
 Judge Smalkin quite plainly agreed with Judge Ramsey's conclusion that Mylan had not adequately pleaded a global conspiracy. He concluded, moreover, that Mylan, in its Third Amended Complaint, had continued to assert the same unsupported claim:
 
 
 16
 Although Mylan does not use the expression "global conspiracy" in its complaint, it clearly asserts that the racketeering acts of the defendants were related, and that they formed a pattern of racketeering activity. This is, in effect, an assertion that some form of global pattern of action existed, in which all of the defendants participated, Mylan's protestations [in its supporting memoranda] to the contrary notwithstanding.
 
 
 17
 Mylan Lab., Inc. v. Pharmaceutical Basics, Inc., 808 F.Supp. 446, 450-51 (D.Md.1992). Judge Smalkin determined that Counts 1, 2, and 4, if permitted to proceed on a theory of global action, "would work a manifest injustice" on the defendants, as they "would be required to defend against claims which have already been shown to have no factual basis." Id. at 452. Accordingly, he dismissed with prejudice all three counts.
 
 
 18
 However, several separate patterns of racketeering activity or, in the words of the Third Amended Complaint, "series of schemes" can be gleaned from the allegations of Counts 1, 2, and 4. In dismissing with prejudice the RICO counts and the state-law claims, Judge Smalkin overlooked the viability of the three counts independent of any global action pleading. In short, although the complaint does not support a claim of a global pattern among all of the defendants, it nevertheless, when read in a light most favorable to the plaintiff, sets forth separate patterns of racketeering acts committed by various groups of defendants. What these separate patterns have in common, it appears from the complaint, is the similar objective of expediting the ANDA approval process for self gain.
 
 
 19
 It must be remembered that Judge Ramsey, when reviewing the First Amended Complaint, dismissed only one RICO count in its entirety. He did not dismiss either the state law claims or, as against some of the defendants, the two counts alleging violations of RICO, 18 U.S.C. §§ 1962(a) and (c). Although we can appreciate Judge Smalkin's position that an extremely complex case with a great divide between pleading and proof has lived long enough, we find that Judge Ramsey's analysis at the Rule 12(b)(6) stage, dealing essentially with pleading, not proof, accorded best with the authorities.
 
 
 20
 As Judge Ramsey properly noted, to state a claim under RICO, Mylan was required to allege a "pattern of racketeering." The statute requires "at least two instances" of racketeering activity. 18 U.S.C. § 1961(5). "Racketeering activity" is defined in 18 U.S.C. § 1961(1) and includes, inter alia, bribery, mail and wire fraud, and obstruction of justice. Further, a "pattern" requires a showing of a relationship between the predicate acts and a threat of continuing activity. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989).
 
 
 21
 Mylan had alleged in the First Amended Complaint and continues to do so in the third version thereof as predicate acts for the RICO counts bribery, mail and wire fraud, and obstruction of justice. Judge Ramsey first concluded, and we do not disagree, that for the purposes of Rule 12(b)(6) Mylan had sufficiently alleged the predicate acts of bribery and obstruction of justice.[6] Next, he quite clearly examined whether Mylan had sufficiently pleaded some "pattern" of racketeering activity. Mylan, 770 F.Supp. at 1076 ("A holding that Mylan has sufficiently alleged the predicate acts of bribery and obstruction of justice does not end the inquiry into the sufficiency of Mylan's RICO claims. The next question is whether the acts alleged constitute a sufficient 'pattern' of racketeering activity."). Although Judge Ramsey would not "attribute every predicate act to every defendant,"[7] he did proceed to review, as Judge Smalkin did not, any allegations as to patterns of racketeering acts allegedly committed separately by defendants ATI, Par, Quad, PBI, Vitarine, Quantum, AHP, the corporations' respective employees, and the defendant FDA employees. Id. at 1077. He recognized that Mylan's allegations clearly show that "each defendant's actions were focussed on undermining the integrity of the FDA approval process in order to improperly obtain advantage for themselves." Id. at 1076. For the purposes of the motion to dismiss, Judge Ramsey concluded, and, again, we do not disagree, that with respect to some of the defendants, Mylan had alleged separate schemes constituting patterns of racketeering. See id. at 1077-78; see, e.g., Third Am.Compl. pp 114(A), 121 (describing various and continuous acts of bribery and obstruction of justice).
 
 
 22
 Finally, Judge Ramsey also concluded that Mylan had sufficiently alleged the elements of the state law torts of unfair competition and malicious interference with business relations. Once again, although the incorporation by reference into Count 4 of the theme of global action is in error, it is not fatal to Mylan's state law claims. We agree with Judge Ramsey's conclusions and sustain Count 4 of Mylan's Third Amended Complaint.
 
 
 23
 We recognize, as did Judge Smalkin, the error of retaining the language of a "joint conspiracy" or "global pattern" of racketeering. Despite the faulty draftsmanship, however, Mylan has again essentially set forth in Counts 1, 2, and 4, a "series of schemes" or separate patterns of racketeering involving generally a corporate defendant, its employees, and FDA defendants. See, e.g., Mylan, 770 F.Supp. at 1066 (noting that the various allegations of acts taken by discrete groups of defendants were "sufficient to support the conclusion that there were various agreements between the manufacturer defendants and the FDA defendants, i.e., that the former were paying the latter in return for first approval of the ANDAs"). In light of those allegations, it simply does not appear "beyond a doubt" that Mylan could "prove no set of facts in support of its claim" which would entitle it to relief. Accordingly we find sufficient for the purposes of Rule 12(b)(6), Counts 1, 2, and also Count 4 of the Third Amended Complaint.[8]
 
 
 24
 III. Mail and wire fraud claims as predicate acts for the RICO counts
 
 
 25
 In its First and Third Amended Complaints, Mylan has alleged as predicate acts for the RICO counts mail and wire fraud claims. On appeal Mylan raises again the question of the sufficiency of those allegations for the purposes of Rule 12(b)(6). In its First Amended Complaint, Mylan set forth at least two theories of mail and wire fraud. First, Mylan primarily contended that the predicate acts of mail and wire fraud were committed when a defendant mailed to the FDA allegedly false ANDAs, and the FDA, relying on the false submissions, then approved the applications. Thus, it was alleged, not only had the FDA been defrauded out of its ANDA approvals, but Mylan, too, had been harmed, in the sense that it had been defrauded out of its rightful ANDA approval and its proper share of the generic drug market.
 
 
 26
 Judge Ramsey dismissed that theory of mail and wire fraud on the grounds that it was legally insufficient. Specifically, he first concluded that ANDAs in the hands of the government and awaiting approval were not "property" within the meaning of the mail fraud statute: "[T]he FDA cannot have been defrauded of its ANDA approvals within the meaning of the federal mail and wire fraud statutes. Accordingly, to the extent that Mylan's allegations of mail and wire fraud rely on this theory they must be dismissed." Mylan, 770 F.Supp. at 1073. Second, Judge Ramsey also concluded that the person allegedly deceived by the misrepresentations must be the same party who was injured by the misrepresentations in order to allege sufficiently the predicate acts of mail and wire fraud. Id. (stating that "to the extent that Mylan's claim of mail and wire fraud rests on the grounds that it was injured by the defendant's false submissions to the FDA, the claim must fail").
 
 
 27
 However, in the First Amended Complaint Mylan also alleged as further support for the predicate acts of mail and wire fraud that, in conjunction with improperly approving the corporate defendants' ANDAs, the FDA defendants also mailed deficiency letters to Mylan requesting unwarranted and unjustifiable data in order to delay approval of Mylan's ANDAs and also mailed to the corporate defendants confidential information submitted by Mylan in order further to facilitate the approval of their ANDAs. See First Am.Compl. p 103(D) and (E). Judge Ramsey, however, also dismissed those allegations. In short, he found the allegations of fraud to be overbroad and conclusory and struck the applicable portions of the complaint pursuant to Federal Rule of Civil Procedure 9(b), which requires that circumstances constituting fraud shall be stated with particularity.
 
 
 28
 Given the facts as alleged in the instant case, we affirm a ruling that precludes Mylan from relying on, as its sole basis for the predicate acts in its RICO counts, the theory that the FDA was defrauded out of its ANDA approvals within the meaning of the mail and wire fraud statutes. However, Mylan, in its Third Amended Complaint has altered its allegations of mail and wire fraud. Specifically, the Third Amended Complaint contains new allegations of the fraudulent use of the mails against Mylan by defendants AHP, Quantum, Vitarine, and their employees. The changes were made, Mylan has contended, to comply with all of Judge Ramsey's rulings with respect to the mail and wire fraud claims and to clarify that it was both deceived and injured by the defendants acts. Thus, Mylan asserts, the Third Amended Complaint no longer seeks to rely solely on the fraudulent submission of ANDAs to the FDA and states with more particularity the remaining allegations of mail and wire fraud. Because Judge Smalkin dismissed the RICO counts for their continued use of the global conspiracy language, he did not consider the sufficiency of the "new" predicate acts alleged in support of the RICO claims. In light of our decision in Part II to sustain the RICO counts, we decline to address the mail and wire fraud allegations and remit the issue to the district court and also grant to the parties an opportunity to consider further and, perhaps, to flesh out the new allegations on remand.
 
 IV. Count 3--Lanham Act Claim
 
 29
 Count 3 of Mylan's Third Amended Complaint introduces a new claim, namely that defendants AHP, Quantum, PBI, and Par each violated § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by making false and misleading advertisements and representations about their generic drug products. Mylan maintains that its complaint properly alleges that each of the defendants' package inserts, brochures, and other advertisements violated § 43(a) of the Lanham Act because they falsely represented or implied (1) that the defendants' drugs had been properly approved by the FDA and (2) that the defendant's drugs were "bioequivalent" to Mylan's drugs.[9]
 
 
 30
 In order to constitute a violation of § 43(a) of the Lanham Act, the contested statement or representation must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context. See, e.g., Castrol Inc. v. Pennzoil Co., 987 F.2d 939 (3d Cir.1993); Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc., 902 F.2d 222 (3d Cir.1990); see also Procter & Gamble Co. v. Chesebrough-Pond's Inc., 747 F.2d 114, 118 (2d Cir.1984) (" 'Section 43(a) of the Lanham Act encompasses more than blatant falsehoods.' " (quoting Vidal Sassoon, Inc. v. Bristol-Myers Co., 661 F.2d 272, 277 (2d Cir.1981))). The parties dispute whether, for the purposes of Rule 12(b)(6), Mylan has sufficiently alleged the essential element of a false or misleading statement.
 
 
 31
 Judge Smalkin dismissed Mylan's Lanham Act claims on the grounds that the complaint failed to allege specifically that the defendants' drugs were not in fact bioequivalent. The failure to allege non-bioequivalence, he concluded, was fatal to Mylan's claim. Judge Smalkin correctly noted that, in order ultimately to succeed on its Lanham Act count, Mylan will have to show more evidence than mere proof that the defendants' claims were supported by unpersuasive test results. "Rather the plaintiff must demonstrate that such tests are 'not sufficiently reliable to permit one to conclude with reasonable certainty that they established' the claim made." McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co., 938 F.2d 1544, 1549 (2d Cir.1991) (emphasis added) (quoting Chesebrough-Pond's, 747 F.2d at 119). Given that ultimate standard and construing the complaint in a light most favorable to Mylan, we conclude that Count 3 alleges sufficient falsity to survive early dismissal under Rule 12(b)(6). The complaint repeatedly alleges, inter alia, that a defendant "falsely represented" that its product was "bioequivalent to its innovator counterpart and other approved generic equivalents;" that the product was "entitled to an AB rating"[10] from the FDA; or that the product was the "generic alternative" to the innovator drug. See, e.g., Third Am.Compl. pp 140, 146, 151, 155. In support of those claims, Mylan has alleged that approval of the defendants' ANDAs had been obtained through "fraud" and ultimately was withdrawn and that the data for the ANDAs or bioequivalence studies had been "falsified" or was seriously "unreliable." In one instance Mylan even has alleged that bioequivalence studies either had not been performed or had been performed on a drug manufactured differently from the one advertised. See id. p 138. In short, Mylan has set forth in the complaint sufficiently particularized allegations of false or misleading representations to sustain, for now, Count 3. Put in other terms, we cannot say, when fairly reading the pleadings, that Mylan has failed to state a set of facts which, if proven, would entitle it to relief.[11]
 
 
 32
 However, Mylan's claims that the defendants' falsely represented that their drugs had been "properly approved by the FDA" must fail. First, in its complaint, Mylan nowhere points to any statement or representation in the defendants' advertising which declared "proper FDA approval." Moreover, that fatal deficiency cannot be cured by contentions that the very act of placing a drug on the market, with standard package inserts often used for FDA-approved drugs, somehow implies (falsely) that the drug had been "properly approved by the FDA." Such a theory is, quite simply, too great a stretch under the Lanham Act. We agree with the defendants that permitting Mylan to proceed on the theory that the defendants violated § 43(a) merely by placing their drugs on the market would, in effect, permit Mylan to use the Lanham Act as a vehicle by which to enforce the Food, Drug, and Cosmetic Act ("FDCA") and the regulations promulgated thereunder. An attempt, by ingenious pleading, to escape one principle of law by making it appear that another not truly appropriate rule is applicable appears to have been attempted.
 
 
 33
 Mylan, in short, is not empowered to enforce independently the FDCA. Cf. Sandoz, 902 F.2d at 230 ("The Lanham Act is primarily intended to protect commercial interests.... [It] provides a private remedy to a commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising. The [FDCA], in contrast, is not focused on the truth or falsity of advertising claims" but on protecting the public interest in safety and efficacy (citations omitted)); see also FDCA, 21 U.S.C. § 337 (authorizing enforcement proceedings only by the United States and, under some circumstances, by a state). In order to state a proper claim for relief under § 43(a) of the Lanham Act, Mylan was required to point to some claim or representation that is reasonably clear from the face of the defendants' advertising or package inserts. That it did not do. Accordingly, that part of the complaint which alleges that the defendants violated the Lanham Act by representing or implying that the drugs had been "properly approved by the FDA" must be rejected.
 
 V. Dismissal with Prejudice
 
 34
 In light of our rulings with respect to the four counts of Mylan's Third Amended Complaint, we need not address whether Judge Smalkin abused his discretion in dismissing with prejudice Mylan's complaint and in refusing to permit further amendments. We agree with Judge Smalkin, however, that the case has remained extremely long in the pleading stage, and we expect the case to proceed with no further motions to amend (other than one designed to comply with a suggestion herein). See, e.g., Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (Appropriate reasons to prohibit further amendments of a complaint include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.").
 
 
 35
 VI. Defendants Raju Vegesna and Jin-Shung Chang
 
 
 36
 Mylan also has requested that the indefinite suspension of litigation against defendant Raju Vegesna, a former ATI executive, be lifted and that the service of process on defendant Jin-Shung Chang, former executive at Quantum, be deemed effective. Appellees AHP and Quantum have taken no position on the two issues.
 
 
 37
 Defendant Vegesna has disappeared and is no longer represented by counsel. He apparently pleaded guilty to two counts of interstate travel in aid of racketeering based on the conduct alleged in the instant case, had been served, and had retained counsel. In May 1992, Judge Ramsey declined to lift the suspension of proceedings but noted that the stay would be lifted and the case against Vegesna would proceed as soon as he was located.
 
 
 38
 Mylan has requested that the panel lift the indefinite suspension of proceedings so that it can continue to prosecute its claims against Vegesna. According to Mylan, Vegesna should suffer a default judgment as a result of his disappearance. Because we have reversed the dismissal with prejudice and because it has been roughly a year or more since the district court last ruled on the issue, the district court should be approached by Mylan and requested to reconsider the facts and the propriety of the suspension of proceedings as to defendant Vegesna.
 
 
 39
 Defendant Chang also was indicted for illegal conduct, but he, too, left the jurisdiction. According to Mylan, it repeatedly attempted to serve Chang at his last known address and also at a closing of his New York residence. At the closing, Mylan attempted to serve the papers on Mrs. Chang, but Mrs. Chang refused to take them. Judge Ramsey did not accept Mylan's acts as proper service. At the time of Judge Ramsey's ruling, it was believed that Chang was in Taiwan. The question of Chang's current whereabouts, if known, and the propriety of service of process in light of any developing circumstances add up to questions of fact which should be taken up by the parties with the district court.
 
 The judgment is
 
 40
 REVERSED.
 
 
 
 [1]
 No generic drug may be marketed without FDA approval of an ANDA. The approval process for ANDAs is designed to occur on a "first-in, first-out basis, 'i.e., the first ANDA submitted to the FDA which satisfactorily passed the labeling, bioequivalency, and chemistry reviews would receive the first approval for a particular generic drug.' " Mylan Lab., Inc. v. Akzo, N.V., 770 F.Supp. 1053 (D.Md.1991)
 
 
 [2]
 Section 1962(c) states:
 It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 
 
 [3]
 Section 1962(a) states in pertinent part:
 It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....
 
 
 [4]
 In light of the standard of review, we traditionally have viewed even poorly drafted complaints in a light most favorable to the plaintiff:
 [The] complaint, to say the least, was inartfully drafted.... In our view, however, a rule 12(b)(6) motion should be granted only in very limited circumstances. The Supreme Court has explained that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." ... We have long held "that a motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim."
 Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir.1989) (citation omitted) (quoting Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir.1969)).
 
 
 [5]
 Accordingly, Judge Ramsey dismissed the anti-trust counts (Counts 440) and Count 3, Mylan's claim under RICO, 18 U.S.C. § 1962(d), of the First Amended Complaint. Those counts had been predicated upon the theory of a global conspiracy among the defendants
 
 
 [6]
 He ruled, however, that Mylan's claims of mail and wire fraud were insufficient. See infra Part III
 
 
 [7]
 Indeed, as Judge Smalkin noted in his ruling, such attribution clearly would have been improper in light of Judge Ramsey's ruling that there had been insufficient allegations to support a global conspiracy theory. Judge Ramsey instead "attributed the acts of the various agents to their corporate manufacturer employers" for the purposes of examining Mylan's showing of a "pattern." Id. at 1077
 
 
 [8]
 Appellees AHP and Quantum correctly observe that Judge Ramsey did not sustain against them any RICO claims set forth in the First Amended Complaint. Count 3, of course, was premised on the global conspiracy theory and thus was dismissed against all of the defendants. As to Counts 1 and 2, however, Judge Ramsey found that Mylan had failed to show a pattern of racketeering by AHP and Quantum:
 Quantum's employee J. Chang is alleged to have made a single $300 payment to Brancato. No other predicate acts are alleged.... [T]his Court holds that the single payment alleged cannot as a matter of law constitute a RICO pattern no matter how many statutes it violated. Accordingly, Mylan's RICO claims against AHP, Quantum and J. Chang must be dismissed for lack of a pattern of racketeering activity.
 Mylan, 770 F.Supp. at 1078.
 In its Third Amended Complaint, however, Mylan has added to its allegations of bribery with respect to defendants AHP, Quantum, and J. Chang. See Third Am.Compl. p 114(A)(11). The allegations include the single $300 cash payment and five meals between 1986 and 1988. The meals, according to the complaint, largely were concentrated over a period of six months at the end of 1987, through the beginning of 1988. In support of the sufficiency of its new allegations, Mylan points out that, with respect to defendants Akzo, PBI, and Matkari, Judge Ramsey found a sufficient "pattern" of racketeering activity based on similar allegations. The allegations found sufficient consisted of a single monetary payment to an FDA employee and several paid meals. Thus, Mylan concludes, the RICO counts should be sustained against AHP, Quantum, and J. Chang because the new allegations of bribery sufficiently show a "pattern" of racketeering activity that is consistent with Judge Ramsey's rulings.
 In light of the additions to the allegations, and in keeping with the overall tenor of Judge Ramsey's rulings with respect to the rest of the defendants, we find that the new allegations of bribery are sufficient for now to demonstrate a "pattern of racketeering activity." Thus, the RICO counts of the Third Amended Complaint must, at the Rule 12(b)(6) level, be sustained as against defendants AHP, Quantum, and Jin-Shung Chang.
 
 
 [9]
 Mylan also has contended on appeal that its complaint further states that the defendants' advertising was false and misleading because the defendants "omitted to state the obviously material fact that the FDA's approval for [the] defendants' generic drugs was obtained by fraud." Mylan's contention is unpersuasive, however, because there simply are no allegations of "material omissions" in the complaint. Accordingly, even if these "omissions" created a cause of action under the Lanham Act--a matter hotly disputed by the appellees--it has no bearing in the instant case in light of the failure to plead such a claim
 
 
 [10]
 According to the complaint, an "AB" rating indicates that the drug is considered to be "therapeutically equivalent" to the innovator drug. See, e.g., Third Am.Complt. p 138
 
 
 [11]
 In 1988, Congress amended § 43(a) of the Lanham Act. Trademark Law Revision Act of 1988, Pub.L. No. 100-667, tit. I, § 132, 102 Stat. 3946 (codified at 15 U.S.C. § 1125(a)). Our analysis of whether Mylan properly stated a claim for relief under § 43(a) is the same under both the former and the amended version of the section. Nothing in the amended § 43(a), which became effective in November 1989, alters the requirement that the plaintiff ultimately must prove that the contested statements or representations were false or misleading. In fact, according to the legislative history, the amendments largely codified the interpretation of § 43(a) that had been given by numerous courts. See S.Rep. No. 515, 100th Cong., 2d Sess. 40, reprinted in 1988 U.S.C.C.A.N. 5577, 5603
 In its opinion, the district court determined that the amended version of § 43(a) should apply to the claim against AHP and Quantum. Mylan has disagreed with that conclusion and has urged that the older version of § 43(a) be applied to AHP and Quantum on remand. However, the applicability and scope of the amended version is not properly before us. The changes to § 43(a) raised the question of whether AHP's and Quantum's alleged statements had been made in "commercial advertising" within the meaning of the amended version. The district court resolved that issue in Mylan's favor, and the ruling has not been challenged by either party.