**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JACK EARL WALKER; ELEANOR
WALKER,
<u>Plaintiffs-Appellees,</u>

v.

IRVIN SOPHER, M.D. D.D.S.,
personally,
<u>Defendant-Appellant,</u>

and

THE TYLER COUNTY COMMISSION;
GARY KELLER, personally and in his
capacity as Sheriff of Tyler County;

No. 95-2248

EARL ROBERT KENDALL, personally
and in his capacity as a Deputy
Sheriff of Tyler County; WALTER
SMITTLE, personally; ROBERT HALL,
personally; MACK DENNIS,
personally; GEORGE TRENT,
personally; RON GREGORY,
personally; CARL LEGURSKEY,
personally; NICHOLAS J. HUN,
personally; DAVE VANCAMP,
personally,
<u>Defendants.</u>

JACK EARL WALKER; ELEANOR
WALKER,
Plaintiffs-Appellees,

v.

ROBERT HALL, personally; MACK
DENNIS, personally,
Defendants-Appellants,

and

THE TYLER COUNTY COMMISSION;
GARY KELLER, personally and in his

capacity as Sheriff of Tyler County;
EARL ROBERT KENDALL, personally
and in his capacity as a Deputy
Sheriff of Tyler County; WALTER
SMITTLE, personally; IRVIN SOPHER,
M.D. D.D.S., personally; GEORGE
TRENT, personally; RON GREGORY,
personally; CARL LEGURSKEY,
personally, NICHOLAS J. HUN,
personally; DAVE VANCAMP,
personally,
Defendants.

No. 96-1088

Appeals from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CA-94-143-1)

Argued: July 10, 1996

Decided: September 23, 1998

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

_____

2

Reversed in part, dismissed in part, and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Marvin Richard Dunlap, DICKIE, MCCAMEY & CHIL-COTE, P.C., Pittsburgh, Pennsylvania; David L. Wyant, SHUMAN, ANNAND & POE, Wheeling, West Virginia, for Appellants. Stephen Douglas Herndon, Wheeling, West Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jack Earl Walker and his wife Eleanor brought this action pursuant to 42 U.S.C. § 1983 and state law against, among others, the appellants, Dr. Irvin Sopher, who was Chief Medical Examiner for the State of West Virginia, and Robert Hall and Mack Dennis, Assistant State Fire Marshals. The Walkers alleged that Sopher, Hall, and Dennis violated Jack Walker's constitutional rights by intentionally withholding from the prosecutor materially exculpatory evidence that they possessed as a result of their investigation of Jack Walker for murder and arson. Appellants moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6), asserting both absolute and qualified immunity. The district court denied the motion, and appellants have filed these consolidated interlocutory appeals. Based on a recent, largely dispositive precedent of this court, we reverse the judgment of the district court and hold that the appellants are entitled to qualified immunity from the federal causes of action. However, because we have no jurisdiction to review the district court's decisions regarding the Walkers' pendent state law claims, we dismiss the appeals in part.

3

I.

On May 11, 1989, Jack Walker was arrested in Tyler County, West Virginia, for the murder of Mary Sherwood and the arson of her home. Walker was incarcerated until his trial in state circuit court. On March 23, 1990, he was found guilty and began serving a life sentence.

The Supreme Court of Appeals of West Virginia reversed Walker's conviction for reasons unrelated to the present action and remanded the case for a new trial. State v. Walker, 188 W.Va. 661, 425 S.E.2d 616 (1992). On May 17, 1993, his second trial resulted in a hung jury, and Walker was released from custody. The state tried Walker a third time in April 1994, and he was finally acquitted.

On December 4, 1994, the Walkers filed this suit pursuant to 42 U.S.C. § 1983 and state law. The Walkers alleged that Dr. Sopher, Hall, and Dennis violated Jack Walker's rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. In particular, the Walkers alleged that each of the appellants intentionally and maliciously withheld materially exculpatory evidence from the prosecutor.

As Chief Medical Examiner for West Virginia, Dr. Sopher conducted the postmortem examination of Mary Sherwood's body on May 11, 1989. The Walkers contend that Dr. Sopher was ordered to file all materials relating to the autopsy of the victim in a sealed document, but the only material filed was his formal report and a photograph of the victim's skull. Moreover, they allege that Dr. Sopher failed to provide tissue samples, autopsy records, photographs, teaching slides, x-rays, diagrams, test results, graphs, notes, histologic slides, chain of custody documents, and other materials, as ordered by the state court in advance of the second trial. Tissue samples whose existence was disclosed at the second trial were not provided prior to the third trial. Finally, the Walkers allege that Dr. Sopher told Sheriff Gary Keller by telephone that the gunshot wound appeared to be consistent with a .38 caliber weapon and that this oral report was not disclosed to the defense prior to the first or second trials.

As for Hall and Dennis, the Walkers allege that they also intentionally withheld exculpatory evidence, which they collected and main-

4

tained in a separate file from the one furnished to the prosecutor. Specifically, they contend that Hall collected four cans of debris from the fire scene, some of which indicated that the fire was not the product of arson, and that Hall found a broken kerosene lantern and substandard natural gas line pipe joints at the scene, both of which could have provided plausible alternative explanations as to the fire's origin. The Walkers contend that Hall delivered this exculpatory evidence to Dennis, who then transferred it to the forensic section of the West Virginia Department of Public Safety for analysis. Dennis, with Hall's knowledge, kept this information in a file separate from the one made available to the prosecuting attorney.

Sopher, Hall, and Dennis each moved to dismiss the actions against them pursuant to Fed. R. Civ. P. 12(b)(6), relying on both absolute and qualified immunity. The district court declined to dismiss the Walkers' § 1983 claim that the appellants withheld exculpatory evidence. The court also declined to dismiss the state common law claims of malicious prosecution. Sopher, Hall, and Dennis appeal these rulings.

II.

We review de novo the disposition of a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). See Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993), cert. denied, 510 U.S. 1197 (1994).[1] "[A] rule 12(b)(6) motion should be granted only in very limited circumstances." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989). Indeed, a motion to dismiss "`should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.'" Id. (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)). Thus, in considering a motion to dismiss, we accept the factual allegations in the complaint as true and afford the plaintiff the benefit of all reasonable inferences that can be drawn from those allegations. Mylan Laboratories, 7 F.3d at 1134; Rogers, 883 F.2d at 325.

_____

[1] Appellants' motion to strike the Walkers' brief is denied. However, we have not considered any material other than the allegations in the Walkers' complaint.

III.

Appellants assert that they are entitled to qualified immunity even if the Walkers' allegations are true. Qualified immunity shields government officials performing discretionary functions from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which [a] reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); DiMeglio v. Haines, 45 F.3d 790, 794 (4th Cir. 1995). The qualified immunity defense is designed "to allow government officials `the freedom to exercise fair judgment' without `being blindsided by liability derived from newly invented rights or new, unforeseen applications of pre-existing rights.'" Cromer v. Brown, 88 F.3d 1315, 1324 (4th Cir. 1996) (quoting Pinder v. Johnson, 54 F.3d 1169, 1173 (4th Cir.) (en banc), cert. denied , 516 U.S. 994 (1995)).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992), cert. denied, 506 U.S. 1080 (1993). This immunity is not afforded out of some special solicitude for the interests of public officials over those of ordinary citizens. Its purpose is to allow officials to govern with vigor rather than with timidity, Anderson v. Creighton, 483 U.S. 635, 638 (1987), and vigorous pursuit of the goals of a democratic government is very much in the interest of the people.

In addressing a qualified immunity defense, we first ask "whether the plaintiff has alleged a violation of law that was clearly established at the time the challenged actions were taken." DiMeglio, 45 F.3d at 794. If the plaintiff has alleged a violation of clearly established law, we then consider "whether a reasonable person in the official's position would have known that his actions violated that right." Id. n.1.

Recently, our court sat en banc to decide a case asking whether, as of 1982, it was clearly established that an investigator violates an accused's due process rights by failing to disclose materially exculpa-

tory evidence to the prosecutor. We concluded that it was not. <u>Jean v. Collins</u>, ___ F.3d ___ (4th Cir. Sept. 17, 1998) (en banc).**2**

In <u>Jean</u> we first defined the universe of law of which we expect public officials to be aware. We concluded that"[o]rdinarily . . . courts in this circuit need not look beyond the decisions of the Supreme Court, this court of appeals, and [where appropriate] the highest court of the state in which the case arose[.]" <u>Id.</u> at ___. We then examined this case law as it stood in 1982 and determined that, at most, it established that prosecutors have a constitutional duty to provide exculpatory evidence to an accused (for the exercise of which <u>Imbler</u> affords absolute immunity) and that knowledge of information in the hands of investigators is imputed to the prosecutor for this purpose. <u>Id.</u> at ___. This imputation did not impose a constitutional duty on investigators to turn over evidence to the prosecutor; instead, it "simply encouraged prosecutors' offices to establish `procedures and regulations . . . to insure communication of all relevant information on each case.'" <u>Id.</u> at ___ (quoting <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972)).

In light of <u>Jean</u> our analysis is largely done, inasmuch as it establishes the state of the law in this circuit as of 1982. Our inquiry narrows, then, to the period between 1982 and the dates of the acts complained of (that is, May 1989 through April 1994).

Only one relevant case could be argued to have changed the legal

_____

**2** The other key holding of <u>Jean</u> is that investigators are "absolutely immune from suits challenging a failure to disclose evidence directly to the defense." ___ F.3d at ___. We reasoned that the decision to disclose or not to disclose evidence to the defense was a prosecutorial function; hence, under the functional approach to absolute immunity prescribed by the Supreme Court, investigators share the absolute immunity already afforded prosecutors for such decisions. <u>Id.</u> at ___. <u>See Buckley v. Fitzsimmons</u>, 509 U.S. 259, 268-269 (1993) (discussing functional approach); <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976) (affording absolute immunity to prosecutors performing prosecutorial functions); <u>Carter v. Burch</u>, 34 F.3d 257, 262-263 (4th Cir. 1994) (absolute prosecutorial immunity extends to alleged withholding of exculpatory evidence), <u>cert. denied</u>, 513 U.S. 1150 (1995).

landscape during this period: Goodwin v. Metts , 885 F.2d 157 (4th Cir. 1989), cert. denied, 494 U.S. 1081 (1990). In Goodwin the plaintiffs were accused of a break-in. After their arrest the investigating officer discovered that a key informant had provided him with a false name and address and could no longer be found. More importantly, about one month before the plaintiffs' trial, another man was arrested in a neighboring jurisdiction and confessed to the break-in. Even without knowing of this confession, the public prosecutor declined to try the very weak case. Instead, a private lawyer who had represented the victims of the break-in did so. Prior to trial, this lawyer conferred with the investigating officer, who did not mention that another man had confessed to the crime. After a jury trial, the plaintiffs were acquitted. They later brought a successful § 1983 action against the officer.

On the officer's appeal, we stated that "[a] police officer who withholds exculpatory information from the prosecutor can be liable under both § 1983 and the state common law." Id. at 162. "Being subjected to a prosecution because an officer withheld exculpatory evidence from the prosecutor while urging that the prosecution should go forward can work a constitutional deprivation." Id. at 163.

The question for us, then, is whether these pronouncements rendered "the `contours of the right' . . . so conclusively drawn as to leave no doubt that the challenged action[s were] unconstitutional." Swanson v. Powers, 937 F.2d 965, 969 (4th Cir. 1991) (quoting Anderson, 483 U.S. at 620), cert. denied, 502 U.S. 1031 (1992). We think that they did not.

First of all, Goodwin was decided on September 12, 1989. Many of the "challenged actions" in this case -- the gathering of physical evidence and the autopsy -- occurred before then. Second, the precise legal basis for the holding in Goodwin is not entirely clear. We described the section 1983 claim at issue in Goodwin alternately as "wrongful prosecution" or "malicious prosecution resulting in a constitutional deprivation." Goodwin, 885 F.2d at 160 & n.1. Moreover, though our analysis seemed to rest on due process, we did not precisely articulate that reliance.

Third, its core holding has been called into doubt by the Supreme Court. The most natural reading of Goodwin is that it recognized a

8

§ 1983 due process claim against a police officer for conduct that would constitute the tort of malicious prosecution under state law. Our discussion rested heavily on South Carolina tort law, 885 F.2d at 161-162, and, in a subsequent appeal concerning attorney's fees for the very same case, we described the verdicts as resting "only upon [the] malicious prosecution claims[.]" Goodwin v. Metts, 973 F.2d 378, 383 (4th Cir. 1992). In 1994 a majority of the Supreme Court held that there is no substantive due process right"to be free from criminal prosecution except upon probable cause," Albright v. Oliver, 510 U.S. 266, 268 (plurality) & 286-291 (Souter, J., concurring) (1994), and a different majority recognized that substantive due process is likewise unavailable as a theory to elevate a common law malicious prosecution claim to constitutional status. Id. at 270 n.4 (plurality opinion) & 281-286 (Kennedy, J., joined by Thomas, J., concurring) (1994). Thus, the legal claim before the Goodwin court and upon which its holding rests is now discredited.

In Taylor v. Waters, 81 F.3d 429 (4th Cir. 1996), we observed that

> [t]o the extent that Goodwin bases its holding on a conclusion that the officer's failure to disclose exculpatory evidence deprived the § 1983 plaintiffs of a liberty interest in avoiding prosecution on less than probable cause, that reasoning has been rejected in Albright v. Oliver , 114 S. Ct. [807 (1994)] .... But to the extent that Goodwin ruled that the officer's failure to disclose exculpatory information deprived the § 1983 plaintiffs of their right to a fair trial, its holding is not affected by Albright. See generally Brady v. Maryland, 373 U.S. 83, 87 (1963) ....

Taylor, 81 F.3d at 436 n.5. These observations are true enough: "to the extent" Goodwin may have rested on a general duty to turn over exculpatory evidence so as to ensure a fair trial, Albright did not affect it. The problem is that neither we nor a reasonable public official can know how "extensively" the Goodwin court relied on this ground, or even if it would have decided the case the same way had it foreseen Albright. In short, the law must simply be clearer than

9

Goodwin made it before public officials can be stripped of qualified immunity.**3**

IV.

Finally, appellants also ask us to review the district court's decision not to dismiss the Walkers' state law claims. We lack jurisdiction to do so. The district court's denial of the motion to dismiss the Walkers' state law claims is not a final order and is therefore not independently appealable. Our jurisdiction over an interlocutory appeal from a denial of immunity does not permit us to consider another ruling of the district court, absent an independent jurisdictional basis, "unless the other issue is (1) inextricably intertwined with the decision to deny [ ] immunity or (2) consideration of the additional issue is necessary to ensure meaningful review of the [ ] immunity question." Taylor, 81 F.3d at 437 (citing Swint v. Chambers County Comm'n, 514 U.S. 35, 51 (1995)).

The state law issues in this case are whether the Walkers stated a cognizable claim for malicious prosecution and whether Hall and Mack are entitled to state common law immunity. These issues are neither "inextricably intertwined with" nor "necessary" to our review of the federal immunity questions. See id. Therefore, we cannot now review the district court's rulings on the Walkers' state law claims.

In sum, the order of the district court denying appellants' motion to dismiss the § 1983 claims based on qualified immunity is reversed. The remainder of the appeal is dismissed, and the case is remanded for such further proceedings as may be necessary.

REVERSED IN PART, DISMISSED IN PART, AND REMANDED
_____
**3** Our decision that the appellants are entitled to qualified immunity on the federal claims obviates any need for us to address their contention that they are absolutely immune from liability on those same claims.