228 F.Supp.2d 1048 (2002)
ETHEX CORPORATION, a Missouri Corporation and Ther-Rx, a Missouri Corporation, Plaintiffs,
v.
FIRST HORIZON PHARMACEUTICAL CORPORATION, a Georgia Corporation, Defendant.
No. 4:01CV1901 ERW.
United States District Court, E.D. Missouri, Eastern Division.
October 1, 2002.
*1049 *1050 Terrence J. O'Toole, Charles A. Weiss, Bryan Cave LLP, St. Louis, MO, for plaintiffs.
Mark H. Levison, Steven M. Wald, Lathrop and Gage, St. Louis, MO, C. David Johnston, Michael S. Rosenthal, Wagner and Johnston, Atlanta, GA, for defendant.

MEMORANDUM AND ORDER
WEBBER, District Judge.
This matter is before the Court on Plaintiffs' Motion to Dismiss all ten counts of Defendant's Counterclaim under Rule 12(b)(6) for failure to state a claim upon which relief could be granted [doc. # 21]. For the reasons outlined below, Plaintiffs' motion is granted in part and denied in part.

I. BACKGROUND FACTS
The Plaintiffs, Ethex Corporation (Ethex) and Ther-Rx Corporation, (Ther-Rx) are incorporated in Missouri and are wholly-owned subsidiaries of KV Pharmaceutical Company (KV). KV is involved in the research, development, and manufacture of a variety of pharmaceutical products. Plaintiffs market and sell products that KV develops, manufactures, and licenses. The Defendant, First Horizon Pharmaceuticals, a Georgia Corporation, is a specialty pharmaceutical company that buys and licenses off-patent drug products and others. It also sells and markets brand-name prescription drugs to physicians.
The parties in this action are competitors. Each corporation manufactures and distributes lines of prescription prenatal vitamins for pregnant women. In late August 2001, Defendant purchased a line of products marketed under the PRENATE family brand name. Defendant owns numerous trademarks that include the use of the word "PRENATE." All of these marks are registered with the United States Patent and Trademark Office. Defendant's main product in dispute here is PRENATE GT. Plaintiff Ther-Rx currently markets several brands of prenatal vitamins including PreCare Prenatal, PremesisRx, PrimaCare and NatalCare. All of these products compete directly with Defendant's PRENATE family vitamins, most notably PRENATE GT. Plaintiff Ethex markets products that competed with some of the PRENATE drugs which are no longer on the market; it still competes directly with PRENATE GT and PRENATE Advance to the extent Defendant markets it.[1]
Plaintiff initially filed a two-count Complaint on November 7, 2001 in the Circuit Court of Saint Louis County alleging false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiff added a count based on the same conduct for violations of Missouri unfair competition law. Shortly thereafter, Defendant properly removed the action to this Court, see 28 U.S.C. § 1441, based on the federal question presented.
Defendant counterclaimed for ten causes of action: (1) assorted violations of § 43 of the Lanham Act, 15 U.S.C. § 1125(a); (2) *1051 unfair competition under Missouri law based on trademark infringement (3) unfair competition under federal law based on the "passing off" doctrine; (4) unfair competition under Missouri law based on the "passing off" doctrine; (5) a request for a declaratory judgment; (6) misappropriation of trademark under Missouri law; (7) deceptive trade practices in violation of Ohio Rev.Code Ann. § 1345.02(A) and Pa. Cons.Stat. Ann. § 73-201-2; (8) civil conspiracy; (9) intentional interference with business relationship; and (10) negligent interference with business relationship. The Court will consider these counts out of order for the sake of clarity.

II. MOTION TO DISMISS STANDARD
Courts should not grant motions to dismiss complaints for failure to state a claim upon which relief could be granted unless it appears beyond a reasonable doubt that the non-moving party can prove no set of facts in support of a claim entitling him to relief. Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir.1998) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering a Rule 12(b)(6) motion, the court takes all allegations in the complaint as true and views the facts alleged in the light most favorable to the non-moving party. The court should not dismiss merely because it doubts that a party will be able to prove all of the necessary factual allegations. Krentz v. Robertson Fire Protection Dist., 228 F.3d 897, 905 (8th Cir.2000). As a practical matter then, a court should grant a Rule 12(b)(6) motion only where a plaintiff "includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Id. The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

III. ANALYSIS

A. Assorted Violations of 15 U.S.C. § 1125(a)
Defendant First Horizon alleges Plaintiffs violated two portions of this statute. First, Defendant claims several violations of 15 U.S.C. § 1125(a)(1)(B), which prohibits a person or entity, in connection with goods transported in interstate commerce from using any "false or misleading description of fact, or false or misleading representation of fact which . . . in commercial advertising or promotion, misrepresents the nature, characteristics [or] qualities . . . of his or her goods, services, or commercial activities." 15 U.S.C. § 1125(a).
Defendant complains of several misrepresentations. One of these has taken up the majority of the parties' briefing on this motion, and this Court will treat this statement first.

1.) Plaintiffs' marketing their vitamins as "generic"
In its counterclaim, Defendant focuses extensively on Plaintiffs' marketing of their vitamins as generic versions of Defendant's brand-name vitamin PRENATE GT.
According to Defendant, Plaintiffs have illegally sought to have their products listed as generic versions of PRENATE in pharmaceutical drug databases that many pharmacists use to fill prescriptions. The typical scenario is that a physician would prescribe PRENATE. A pharmacist would look in the databases, see Plaintiff's drugs listed as generic versions of or alternatives to PRENATE, and then substitute it. This is problematic, Defendant asserts, for two reasons. First, nothing is "generic" unless the Food and Drug Administration (FDA) declares it to be. Accordingly, since the FDA has never declared Plaintiffs' *1052 products to be generic versions of PRENATE GT, Defendant takes the position that reliance on categorizing a drug not so designated as generic is misplaced. Thus, in Defendant's view, calling the products "generic" is literally false. Taking this one step further, Defendant alleges that Plaintiffs' calling their products "generic" is at best misleading because it causes pharmacists to violate the pharmacy laws of various states that prohibit prescription substitution unless the two drugs are either "pharmaceutically equivalent" or "therapeutically equivalent." The thrust of Defendant's counterclaims is essentially that Plaintiffs have termed their drugs generic when they are not; and that Plaintiffs did so intentionally to induce pharmacists to illegally substitute their products for PRENATE GT. This practice, Defendant maintains, harms Defendant because Plaintiffs have been taking a "free ride" on Defendant's goodwill associated with PRENATE.
Plaintiffs, on the other hand, urge this Court to dismiss this claim because Defendant is trying to bring a private cause of action under the federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301 et seq., which the statute itself disallows. This Court agrees that private rights of action are not authorized under the FDCA because the text of 21 U.S.C. § 337 is explicit. That section provides that "all proceedings for the enforcement of or to restrain violations of [the FDCA] shall be by and in the name of the United States." 21 U.S.C. § 337.[2] This is enough to take private rights of action out of the picture. For this Court to determine, however, whether Defendant's counterclaims assert a private right of action under the FDCA, further discussion is required.
The FDCA requires FDA approval of a "new drug application" (NDA) before a drug may be sold in interstate commerce. 21 U.S.C. § 355(a). Every drug is a "new drug" unless it has been generally recognized among qualified experts as "safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof." Id. § 321(p)(1). Defendant concedes that PRENATE GT is not a "new drug" and thus did not go through the FDA approval process, nor was it required to do so.
A similar drug may be marketed (and thus approved by the FDA) as the "therapeutic equivalent" to an NDA approved brand under a separate procedure by filing an "abbreviated new drug application." (ANDA) Id. § 355(j). To complete the ANDA process, the manufacturer must show that its drug is "bioequivalent" to the drug that the FDA approved as an NDA. Id. § 355(j)(2)(A)(iv). Bioequivalent means that the second drug's rate and extent of absorption in the human body do not show significant differences from the rate and extent of absorption of the pioneer drug. Id. § 355(j)(8). In addition, ANDA's must usually show that the drug's active ingredients are the same as those of the pioneer drug. Id. § 355(j)(2)(A)(iii). Bioequivalence is an element of "pharmaceutical equivalence," which one must show to demonstrate that the two drugs are "therapeutically equivalent." Each year the FDA publishes the "Orange Book," a list of all NDA approved drugs along with "therapeutic equivalence" determinations for versions of listed NDA approved drugs. Pharmacists consult the Orange Book, among other things, in making prescription substitution decisions.
Both parties agree, however, that neither Plaintiffs' nor Defendant's prenatal vitamins are subject to FDA approval. Defendants did not complete the rigorous NDA approval process before it marketed PRENATE GT. As a result, Plaintiffs did *1053 not file an ANDA application before they sold their vitamins. Therefore, if a pharmacist received a prescription for PRENATE GT, and looked in the Orange Book, the pharmacist should understand that the FDA had not evaluated it. If the FDA had not evaluated PRENATE GT, the pharmacist should deduce that Plaintiffs' products, claiming to be generic versions of PRENATE GT, were not required to go through the ANDA process.
Notwithstanding these facts, Defendant claims Plaintiffs engaged in false advertising by marketing their vitamins as "generic." Defendant's central premise is that calling the vitamins generic is an implicit representation that the vitamins have met the test of bioequivalency and therapeutic equivalency. See Defendant's Answer and Counterclaims ¶ 43 (unless a drug has an approved ANDA, it cannot be properly and correctly represented to be generic to another drug), ¶ 57 (the term generic as used in the pharmaceutical industry pre-supposes FDA approval.), ¶ 63 (marketing vitamins as generic infers equivalence and interchangeability). According to Defendant, since Plaintiffs' products have not met that standard, physicians are confused and are illegally substituting Plaintiffs' vitamins for Defendant's PRENATE GT, which in turn confuses the consumers.
Plaintiffs insist that Defendant is using the Lanham Act as a vehicle to assert an FDCA violation. This Court's research shows that the Eighth Circuit has never addressed this issue. Plaintiffs, however, refer this Court to Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc., 902 F.2d 222 (3d Cir.1990), Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130 (4th Cir.1993) and other district court decisions to support their argument for dismissal. Sandoz involved the appeal from a denial of a preliminary injunction. The plaintiff sued for false advertising under the Lanham Act, claiming that the defendant falsely listed an ingredient as "active" on a cough syrup label, when FDA regulations required an "inactive" labeling. The plaintiff did not produce any evidence that the "inactive" label was misleading to the consuming public; the case thus hinged on whether the term "inactive" was literally false. The Third Circuit affirmed the denial of the injunction because plaintiffs produced no evidence that the term was false and that the FDA had never conclusively determined that the particular ingredient had to be labeled as either "active" or "inactive" under its regulations. Sandoz, 902 F.2d at 231. The court refused to find as a "matter of common sense" what the FDA, "with all of its scientific expertise, has yet to determine." Id. The court further noted that the Lanham Act does not indirectly allow a private right of action, especially in cases requiring original interpretation of the FDA's regulations. Id.
Sandoz is not completely controlling because the present case involves a motion to dismiss; at this stage this Court must not ask whether Defendant has proved or will prove enough to win at trialthe proper inquiry is whether, if everything the Defendant has alleged is true, it would be entitled to relief. Sandoz does, however, stand for the proposition that a court should not find a label to be literally false if the complaining party has made no showing other than a proffered interpretation of an agency's regulations. It also cautions courts not to determine preemptively how an administrative agency will interpret and enforce its own regulations.
Mylan involved a similar dispute to the current case. In Mylan, a drug manufacturer sued the generic drug manufacturer under § 43 of the Lanham Act for two false or misleading representations. The Fourth Circuit upheld dismissal of the part of the complaint which alleged that the *1054 defendant had falsely represented that the FDA had properly approved defendant's drugs. The court rejected that claim because plaintiff had not alleged that defendant had ever claimed FDA approval; instead the plaintiff relied on the bare fact that defendant had placed its drug on the market and argued that that market placement implied FDA approval. In dismissing this claim the court held that to state a claim under the Lanham Act, the plaintiff had to point to "some claim or representation that is reasonably clear from the face of the defendant's advertising or package inserts." Mylan 7 F.3d at 1139. The court agreed that allowing the "implied FDA approval claim" to stand would endorse a private right of action under the FDCA. See id.
The Mylan plaintiff had also complained that the generic manufacturer had falsely represented that its drugs were bioequivalent to plaintiff's products. The trial judge had dismissed that portion of the complaint because plaintiff never explicitly stated that the drugs were not bioequivalent. In reversing, the Fourth Circuit held that it was sufficient, under the liberal notice pleading rules, to claim that defendant had falsely represented bioequivalencein other words, plaintiff did not have to come out and say, "Defendant's products are not bioequivalent."
Mylan is similar to Barr Laboratories, Inc. v. Quantum Mechanics, Inc., 1994 WL 1743983 (E.D.N.Y. Feb.7, 1994), a case involving a dispute between two generic drug manufacturers. In that case, the defendant had allegedly made false statements to the FDA when it submitted its abbreviated new drug application (ANDA). These misrepresentations caused the FDA to rescind its approval. The plaintiff then sued under the Lanham Act, claiming defendant falsely advertised its drugs to consumers as "generic" and "bioequivalent" to the actual pioneer drug. Relying on Mylan, the court dismissed the complaint because the plaintiff did not argue that the drugs were not in fact bioequivalentthe plaintiffs merely complained that calling the drugs generic and bioequivalent implied FDA endorsement. See Barr, 1994 WL 1743983 at *8-10.
Defendant First Horizon insists that Grove Fresh Distributors, Inc. v. Flavor Fresh Foods, Inc., 720 F.Supp. 714 (N.D.Ill.1989) governs the resolution of this issue. There, plaintiff brought a Lanham Act false advertising claim, arguing that defendants' representation that its product was "100% from concentrate" was false because it allegedly contained additives. The Grove Fresh defendantlike Plaintiffs in our case  moved to dismiss, and argued that the Lanham Act claim was a misguided attempt to recover for FDCA violations. The court disagreed, noting that suing under the Lanham Act for affirmatively misrepresenting facts was appropriate, even if the plaintiff relied on an FDA regulation to prove falsity. Grove Fresh, 720 F.Supp. at 716. Even though the FDA had defined "100% from concentrate," the court allowed the plaintiff to go forward with its Lanham Act claim because the plaintiff was using the FDA regulation "merely to establish the standard or duty which defendants allegedly failed to meet." Id. According to the court, plaintiff could have stated a Lanham Act claim without the FDA definition by simply providing other evidence establishing the market definition of the term. Id. Thus, in the court's view, the plaintiff was not relying solely on the FDA regulations to pursue its false advertising claim. Id.
The task for this Court, then, is to determine whether this case more closely approximates Sandoz, Mylan, and Barr, or is more analogous to Grove Fresh. An analysis of all the cases in this area suggests a few salient conclusions. Mylan *1055 suggests that a party can not state a claim under the Lanham Act merely by placing a drug on the market, because placing a drug on the market does not imply FDA approval. Defendant's counterclaim satisfies Mylan because it alleges an affirmative misrepresentation of the term "generic." False statements, however, are actionable under the Lanham Act even if they involve FDA-regulated products. But the cases have cautioned that the courts should not usurp the FDA's authority to interpret and enforce its own regulations. See, e.g., Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc., 902 F.2d 222, 231 (3d Cir.1990); Summit Technology, Inc. v. High-Line Medical Instruments Co., 933 F.Supp. 918, 935-42 (C.D.Cal.1996) (dismissing Lanham Act claims which would have required the court to originally interpret FDA regulations.)
Based on these rulings, this Court finds that this portion of Defendant First Horizon's counterclaim violates the teachings of Sandoz and Barr. While Defendant insists that it is not attempting to privately enforce the provisions of the FDCA, the express language of its own counterclaim speaks to the contrary. The touchstone of Defendant's argument focuses on the fact that the word "generic" implies FDA endorsement and certain FDA-defined concepts. See Defendant's Answer and Counterclaims ¶ 43 (unless a drug has an approved ANDA, it cannot be properly and correctly represented to be generic to another drug), ¶ 57 (the term generic as used in the pharmaceutical industry pre-supposes FDA approval.), ¶ 63 (marketing vitamins as generic infers equivalence and interchangeability). Defendant argues that pharmacists, upon seeing Plaintiffs' vitamins marketed as generic, were confused into believing that they could lawfully substitute Plaintiffs' version of the drug. But the pharmacists could only be confused if "generic" is taken as an implicit representation that the product meets FDA standards of bioequivalence and therapeutic equivalence. The decisions in this area have refused to allow plaintiffs to state a claim based on implicit representations of FDA approval; this Court thinks it inappropriate, then, to sustain a Lanham Act claim based on a representation which somehow implied FDA definitions.
The FDA has not required either parties' drugs to obtain FDA approval. Thus, neither party has tested, nor were they required to test their drugs for bioequivalence and therapeutic equivalence. A pharmacist should know this if he looked in the Orange Book. Moreover, no federal statute or FDA regulation has defined the term "generic." Unlike in Grove Fresh, where the term at issue was clearly defined in an FDA regulation, this Court would be forced to determine FDA policy in order to determine the truth or falsity of the "generic" nomenclature. This Court agrees with the majority of courts that have handled this issue that this type of claim is better left to the FDA who has the expertise in enforcing and interpreting its own complicated regulations. This is especially true in this case where the FDA has not even required prenatal vitamins to meet any standards.
For these reasons, to the extent Defendant claims a violation of the Lanham Act based on Plaintiffs' marketing their vitamins as generic, or alternatives to Defendant's product, or inducing illegal substitution, that portion of the Counterclaim is dismissed.

2.) Defendant's remaining false advertising claims
Defendant First Horizon has also complained in ¶ 24 and ¶ 25 of its counterclaim, in the section entitled "Facts Common To All Claims For Relief," that Plaintiffs *1056 have made other misrepresentations about their own products which amount to false advertising under the Lanham Act. Representations in this context fall into three categories: (1) those that are literally false as a factual matter; (2) claims that may be literally true but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers; and (3) nonactionable puffery. United Industries Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir.1998). Puffery is exaggerated advertising, blustering and boasting upon which no reasonable consumer would rely. Id. It includes "representations of product superiority that are vague or highly subjective". Id. False descriptions, however, "of specific or absolute characteristics of a product and specific, measurable claims of product superiority based on product testing" are actionable. Id. At this stage of the proceedings it is appropriate for this Court to decide whether the alleged statements are puffery. See In re General Motors Corporation Anti-Lock Brake Products Liability Litigation, 966 F.Supp. 1525, 1534 (E.D.Mo.1997).
The statements in ¶ 24(a-c) all involve allegations that Plaintiffs have made representations in their advertising materials that are not literally false, but misleading.
a. PreCare Conceive assists men whose partners are planning to conceive a child, which misleadingly implies that the product advances or assists in conception.
b. PrimaCare is "the first and only prescription nutritional supplement with essential fatty acids," which misleadingly implies that fatty acids are responsible for reduced incidence of neural birth defects.
c. PrimaCare offers a "reduced risk of birth defects through exclusive patented formulas," which misleadingly implies that the formulations are patented or that the patented portion of the drug reduces birth defects; rather, only some of the ingredients within the formulation are patented and those do not reduce birth defects.
d. Ther-Rx's products are "patented," which misleadingly implies that the entire formulation is patented when in fact only some of the individual ingredients are patented.
e. Ther-Rx states that clinical studies show that PremesisRx is effective in reducing morning sickness, but the studies cited rely upon multiple doses of vitamin B6 to achieve this result, which leads or may tend to lead the prospective purchaser to believe that morning sickness may be alleviated with only one dose.
Unlike in "literally false" cases, a party complaining that representations are misleading under the Lanham Act "bears the ultimate burden of proving actual deception by using reliable consumer or market research." United Industries Corp. v. Clorox Co., 140 F.3d 1175, 1183 (8th Cir. 1998). Whether something is misleading is not an issue appropriate for this Court to decide on a Rule 12(b)(6) motion to dismiss. This Court must draw all reasonable inferences in favor of the non-moving party. All this Court must determine at this stage of the proceedings is whether the counterclaim alleges enough such that a rational fact-finder may conclude the representations were misleading. Moreover, as the First Circuit has noted, whether a representation is misleading is "determined by public reaction not judicial evaluation." Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 37 (1st Cir.2000). Since the test for misleading statements is the ultimate effect they had on consumers, this Court's conclusions at this stage about whether the statements are in fact misleading, are "at best not determinative, and at worst irrelevant." Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 947 (3d. Cir.1993). For the foregoing reasons, Plaintiffs' motion to dismiss *1057 the allegations contained in ¶ 24(a)-(e) is denied.
Defendant has also alleged in ¶ 24(f) that Ther-Rx has falsely stated that it contains vitamin B3 when it only contains vitamins B6 and B12. This is an objective factual statement which can either be proved or disproved, and not mere puffery. Plaintiffs' motion to dismiss this claim is denied.
In ¶ 25, Defendant has alleged several misrepresentations some of which amount to non-actionable puffery, i.e. ¶ 25(a), (b), (f), and (h). These statements involved extolling the virtues of Plaintiffs' products. Parties may sing their own product's praises without subjecting themselves to a Lanharn Act claim premised on the belief that the statements imply that other products are worse. Therefore, Plaintiffs' motion to dismiss the Counterclaim with respect to the allegations contained in ¶ 25(a), (b), (f), and (h) is granted.
For the reasons states in the analysis pertaining to ¶ 24, Plaintiff's motion to dismiss the claims stated in ¶ 25(c), (d), (e), (g), and (i) will be denied.

3.) Defendant's likelihood of confusion claim
Defendant has also alleged that KV purposely named its newest prenatal vitamin product using the phrase "Gloss Tabs" so as to confuse the public and otherwise trade off of First Horizon's newest prenatal vitamin product, PRENATE GT. Defendant's Answer and Counterclaims ¶ 91.
It appears that this is an attempt to state a cause of action under 15 U.S.C. § 1125(a)(1)(A). This section of the Lanham Act also addresses recovery for the use of any word or false designation of origin when the designation is likely to cause confusion, mistake, or deception as to (1) the affiliation, connection, or association of defendant with the other person; or (2) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person. 15 U.S.C. § 1125(a)(1)(A).
The problem is that in ¶ 91, Defendant complains that KV's "subtle use of the PRENATE mark in its efforts to confuse consumers or trade off of the confusion associated with similar prescription prenatal vitamins constitutes a misleading description of fact or false or misleading misrepresentations of fact." Then, as an example of this violation, Defendant refers to Plaintiffs' naming their product "Gloss Tabs." Plaintiffs, however, have made no factual assertions by choosing a name for their product. It is unclear whether the substance of ¶ 91 was to complain of all the other misrepresentations Plaintiffs allegedly made about their own products or to fit Plaintiffs' marketing their product as generic into the rubric of this branch of the Lanharn Act. This Court has already treated those two possibilities above.
This Court can conclude, from examining the Counterclaim as a whole, that Defendant, in discussing the confusion between Plaintiffs' product "Gloss Tabs" and its own product PRENATE GT, is attempting to state a § 43(a) trademark infringement claim. According to McCarthy, the courts have nearly unanimously held that § 43(a) provides a federal vehicle for assertion of infringement of even unregistered marks and names. 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:14 (4th ed.).
In Co-Rect Products, Inc. v. Marvy! Advertising Photography, Inc., 780 F.2d 1324, 1329-30 (8th Cir.1985), the Eighth Circuit recognized that § 43(a) was designed to create a new federal unfair competition remedy for false designations of origin. The difference between § 43(a) and 15 U.S.C. § 1114, the trademark infringement statute for registered marks, is that § 43(a) does not include a registration *1058 prerequisite. Defendant has alleged that its marks are registered, so it is unclear why Defendant chose to proceed under § 43(a) for trademark infringement. Nevertheless, the courts are clear that no matter whether a party proceeds under 15 U.S.C. § 1114 or § 1125, the test for violation is the same; did the party allege a likelihood of confusion? McCarthy, supra at § 27:18; Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). In Co-Rect Products, the Eighth Circuit discussed the two provisions and in analyzing the § 43(a) claim, defined likelihood of confusion, using the same factors the Eighth Circuit developed for "registered marks" cases. Co-Rect Products, 780 F.2d at 1330; SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir.1980).
At this stage, this Court is not to decide whether consumers were actually confused; that burden will be on Defendant to show at trial or in response to a summary judgment motion. Plaintiff, in alleging consumer confusion between PRENATE GT and NatalCare Gloss Tabs, has stated enough to survive a motion to dismiss. Plaintiffs' motion to dismiss this portion of Defendant's counterclaim in ¶ 91 is denied.
Based on the foregoing, Plaintiffs' Motion to Dismiss Count I of Defendant's Counterclaim is granted in part and denied in part.

B. Defendant's Remaining Unfair Competition Claims
Defendant has alleged four additional causes of action based on the same conduct alleged in Count I which this Court has already addressed: (1) unfair competition under Missouri law based on trademark infringement (2) unfair competition under federal law based on the "passing off" doctrine; (3) unfair competition under Missouri law based on the "passing off" doctrine; and (4) misappropriation of trademark under Missouri law

1.) Count II unfair competition under Missouri law based on trademark infringement.
The Court's analysis with respect to trademark infringement under Missouri law is the same as under federal law. Defendant may proceed with the false advertising claims this Court has not dismissed, and may also proceed on the likelihood of confusion claim, but may not proceed on the theory that Plaintiffs illegally marketed their products as generic, or induced pharmacists to illegally substitute their products for Defendant's. Thus, Plaintiffs' motion to dismiss Count II is granted in part and denied in part.

2.) Counts III and IV the "passing off doctrine."
McCarthy has identified three situations where courts have used the term "passing off" doctrine to describe illegal conduct: (1) substitution of one brand of goods when another brand is ordered; (2) trademark infringement where the infringer intentionally meant to defraud and confuse buyers; and (3) trademark infringement where there is no proof of fraudulent intent, but there is a likelihood of confusion among buyers. 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:1 (4th ed.). Defendant, in counts III and IV, claims that Plaintiffs' actions were intentional. Regardless of Defendant's theory, its allegations are based on the same conduct as their claims in Count I. Defendant may proceed on its likelihood of confusion claims (the false advertising claims do not fit the "passing off rubric," but Defendant will be able to go forward with that claim elsewhere), but may not use state unfair competition law to enforce privately the provisions of the FDCA. Thus Defendant may not proceed *1059 here under the theory that Plaintiffs illegally marketed their products as generic or induced pharmacists to illegally substitute Plaintiffs' products for Defendant's. This analysis is the same with respect to Count III (Defendant's federal passing off claim.) See Home Builders Assn. of Greater St. Louis v. L & L Exhibition Management, Inc., 226 F.3d 944, 950 (8th Cir.2000) (§ 43 of the Lanham Act was intended to codify the common law doctrine of "passing off"). Thus, Plaintiffs' motion to dismiss Counts III and IV is granted in part and denied in part.

3.) misappropriation of trademark
Based on the analysis of Count I, since Defendant's Count VI is based on Plaintiffs' inducing pharmacists to illegally substitute Plaintiff's products, Plaintiffs' motion to dismiss Count VI is granted.

C. Request for Declaratory Judgment
In Count V, Defendant is inviting this Court to issue a nationwide declaratory judgment stating that "because KV's products have not been proved to be equivalent to PRENATE, it is unlawful for KV to suggest or insinuate to pharmacists that they can substitute KV's products for prescriptions of PRENATE in states that limit substitution to pharmaceutically or therapeutically equivalent drugs."
This Court agrees with Plaintiffs that to the extent that this request is based on the complaint that Plaintiffs have marketed their products as generic, this Count must be dismissed. This conclusion draws inexorably from this Court's analysis of Count I. This Court declines to exercise supplemental jurisdiction over this claim. Federal district courts may refuse to exercise supplemental jurisdiction over a state law claim if the claim raises a novel or complex issue of state law. 28 U.S.C. § 1367(c)(1). This Court may exercise this option at any time in the proceedings. See Innovative Home Health Care, Inc. v. P.T.-O.T. Associates of the Black Hills, 141 F.3d 1284, 1287 (8th Cir.1998). Defendants ask this Court to interpret the pharmacy laws of the fifty states and engage in a mass judicial fiat by adjudicating the propriety of Plaintiffs' marketing practices without any word from a single pharmaceutical board. This Court declines the invitation. This is the sort of complex issue of state law that should be left to the various pharmacy boards and courts of the respective states.

D. Deceptive Trade Practices
Defendant has alleged that Plaintiffs have engaged in conduct which violates the Ohio Deceptive Practices Act, see Ohio Rev.Code Ann. § 1345.02(A) and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), see 73 Pa. Cons.Stat. § 201-2. The Ohio courts have said that the test for violating the Ohio statute and the Lanham Act is the same. See Worthington Foods, Inc. v. Kellogg Co., 732 F.Supp. 1417 (S.D.Ohio 1990). Similarly, the Pennsylvania courts have recognized that the Pennsylvania UTPCPL encompasses an array of practices which might be analogized to passing off, misappropriation, or trademark infringement. DiLucido v. Terminix Intern., Inc., 450 Pa.Super. 393, 676 A.2d 1237, 1240 (1996). The Pennsylvania statute defines "unfair methods of competition" and "unfair deceptive acts and practices" as "engaging in . . . other fraudulent conduct which creates a likelihood of confusion or misunderstanding." 73 Pa. Const. § 201-2(4)(xvii).
Thus, this Court's analysis of Defendant's counterclaims above applies equally to this Count. As with Counts I-IV, Count VII is dismissed with respect to allegations of marketing products as generic and encouraging illegal substitution, but Defendant may proceed under these *1060 two state statutes with the false advertising claims this Court has not dismissed, as well as with the likelihood of confusion claim based on Plaintiffs' naming their product "Gloss Tabs"

E. Intentional Interference With Business Relationship
Under Missouri law, a claim of tortious interference with a contract or business expectancy requires: (1) a contract or valid business expectancy; (2) knowledge of the contract or relationship; (3) a breach induced or caused by intentional interference; (4) absence of justification; and (5) damages. Nazeri v. Missouri Valley College, 860 S.W.2d 303, 316 (Mo.1993).
Plaintiffs argue that this Court should dismiss this Count because Defendant has failed to allege both the "absence of justification element," and Plaintiffs' knowledge of Defendant's business relationships. In ¶ 157, Defendant alleged that Plaintiffs intentionally interfered with Defendant's business relationships with physicians, and doctors. Elsewhere in the Counterclaim, Defendant mentions that Plaintiffs had purposefully told other people that Defendant's products were no longer available, to confuse consumers. The Court believes, that under the liberal notice pleading rules, Defendant's allegations are sufficient to place Plaintiffs on notice of this claim.
The same principles apply with respect to the "absence of justification" element. The Court agrees with Defendant that the numerous allegations that Plaintiffs' conduct was wrongful and malicious is sufficient to put Plaintiffs on notice of this claim. Plaintiffs' motion to dismiss Count IX is therefore denied.

F. Negligent Interference With Business Relationship
In Fleischer v. Hellmuth, Obata & Kassabaum, 870 S.W.2d 832, 834 (Mo.Ct. App.1993), the court refused to recognize a cause of action for negligent interference with a contract cognizable under Missouri law. See also International Plastics Development, Inc. v. Monsanto Co., 433 S.W.2d 291 (Mo.1968) ("the general rule appears to be that liability for interference even with existing contracts cannot be based on mere negligent conduct"). Plaintiffs' motion to dismiss Count X is granted.

G. Civil Conspiracy
Defendant has also alleged that Plaintiffs wrongful actions in their product marketing amount to an actionable tortious conspiracy. Civil conspiracy extends liability based on an underlying wrongful act. Mark VII, Inc. v. Barthol, 926 S.W.2d 128, 131 (Mo.Ct.App.1996). While this Court has denied Plaintiffs' motion to dismiss in several respects, the conspiracy count will remain based upon the remaining allegations.
However, a conspiracy contemplates an agreement among two separate entities. Two subsidiaries of the same parent cannot conspire, because the subsidiaries have no real existence apart from the parent. See Davidson & Schaaff, Inc. v. Liberty Nat. Fire Ins. Co., 69 F.3d 868, 871 (8th Cir.1995); see also Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 771, 104 S.Ct. 2731, 81 L.Ed.2d 628 (subsidiaries and parents cannot conspire). Allowing the conspiracy claim to stand with respect to subsidiaries and parents would sustain a claim where a corporation conspired with itself. Defendant has, however, alleged in ¶ 148 that Plaintiffs have conspired with others. Thus, for now, Plaintiffs' motion to dismiss Count VIII is denied.
*1061 Therefore,
IT IS HEREBY ORDERED that Plaintiffs' Motion to Dismiss Counts VI and X is GRANTED.
IT IS FURTHER ORDERED that Plaintiffs' Motion to Dismiss Counts VIII and IX is DENIED.
IT IS FURTHER ORDERED that Plaintiffs' Motion to Dismiss Counts I, II, III, IV, and VII is GRANTED in part and DENIED in part. Defendant may not, under any count, proceed under the theory that Plaintiffs illegally marketed their products as "generic," or "alternative" to Defendant's product. Nor may Defendant proceed under the theory that Plaintiffs illegally induced pharmacists to substitute their products for Defendant's products. Specifically, Plaintiff's Motion to Dismiss the specific claims made by Defendant in ¶ 24(a-f) under the section entitled "Facts Common to All Claims For Relief," is DENIED. Plaintiff's Motion to Dismiss specific claims made by Defendant in ¶ 25(a), (b), (f), and (h) under the section entitled "Facts Common to All Claims For Relief," is GRANTED, and as to ¶ 25(c), (d), (e), (g), and (i) is DENIED. Defendant may also proceed with its likelihood of confusion claim based on Plaintiffs' naming their product "Gloss Tabs."
IT IS FURTHER NOTED that this Court has declined to exercise supplemental jurisdiction over Count V. Thus this Count is DISMISSED without prejudice.
NOTES
[1] There is a factual question as to whether Defendant still markets PRENATE Advance.
[2] There are exceptions where States may sue, but those are not applicable here.